UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVERSIFIED CAPITAL INVESTMENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SPRINT COMMUNICATIONS, INC., et al., <br><br> Defendants. | Case No. 15-cv-03796-HSG <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND; GRANTING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT; SETTING CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. Nos. 15, 30 |

Before the Court is the motion to dismiss filed by Defendants Sprint Communications, Inc. ("Sprint"), Nextel Communications, Inc. ("Nextel"), and Nextel of California, Inc. ("Nextel California") (together, "Defendants"). Dkt. No. 15 ("Mot."). Defendants move to dismiss Plaintiff Diversified Capital Investments, Inc.'s ("Plaintiff") putative class action complaint for breach of contract, Dkt. No. 1 ("Compl."), under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. Plaintiff has filed an opposition, Dkt. No. 19 ("Opp."), and Defendants have replied, Dkt. No. 20 ("Reply").

For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH LEAVE TO AMEND** Plaintiff's breach of contract claim, and **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's declaratory relief claim. The Court also **GRANTS** Plaintiff's unopposed motion to amend its proposed class definition, which was filed while the motion to dismiss was under submission. The Court **SETS** a case management conference for May 31, 2016, at 2:00pm to discuss scheduling matters.

I.   **BACKGROUND**

This is a putative class action brought under state law regarding Defendants' termination of their commercial lease agreements with Plaintiff and other similarly-situated lessors.

### A. Factual Allegations

Plaintiff's predecessor-in-interest, Diversified Equity Holdings L.P. ("DEH"), owns an office building in San Rafael, California ("Property"). Compl. ¶¶ 1, 13. Around March 31, 1998, DEH entered into a commercial lease agreement ("Lease Agreement") with Nextel California, a wholly-owned subsidiary of Nextel, authorizing Nextel California to operate a cell site for its "wireless radio telecommunications mobile telephone system" on part of the Property ("Leased Premises"). *Id.* ¶¶ 2, 13 & Ex. 1. During the initial term of the lease, the Nextel entities merged with Sprint to become Sprint Nextel. *Id.* ¶ 14. On July 24, 2008, Sprint Nextel renewed the Lease Agreement with DEH for another ten years, through December 31, 2018. *Id.* ¶ 15 & Ex. 2.

In late 2010, Sprint Nextel publicly announced that it planned to phase out the platform technology that it used to operate its wireless telecommunications network, known as integrated digital enhanced network ("iDEN") technology, sometime in 2013. *Id.* ¶¶ 11, 16. On May 29, 2012, Sprint Nextel publicly announced that it planned to stop using its iDEN technology as early as June 30, 2013. *Id.* ¶ 16. In accordance with that statement, on June 30, 2013, Sprint Nextel discontinued use of the iDEN platform and, shortly thereafter, changed its name to Sprint. *Id.*

On September 9, 2013, Sprint sent DEH a letter, from which the instant dispute arises, stating that it was exercising its unilateral right to terminate its lease under Section 12(b) of the Lease Agreement. *Id.* ¶ 17 & Ex. 3. Section 12(b) provides that, "[Nextel California] shall have the right to terminate this Lease . . . [i]f [it] determines at any time that the Leased Premises are not appropriate under [its] design or engineering specifications for its Communication Facility or the communications system to which the Communication Facility belongs." *Id.*, Ex. 1 ¶ 12.[1] Sprint did not say why it was terminating the Lease Agreement. *See id.* ¶ 17 & Ex. 3. Defendants stopped paying rent on or about April 30, 2014, causing Plaintiff the loss of its anticipated rental earnings. *Id.* ¶ 21. Plaintiff tried but could not find a new tenant to mitigate its losses. *Id.*

Plaintiff alleges that Defendants' termination of the Lease Agreement was improper because Defendants did not make any determination that the "design or engineering specifications

---

[1] The Lease Agreement defines "Communications Facility" as "the antennas and all of [Nextel California's] equipment, cables, batteries, wires, and accessories." *Id.*, Ex. 1 at Preamble § 1.

2

1  of the Leased Premises" were inappropriate. To the contrary, Plaintiff alleges that they remained
2  appropriate for both Defendants' communications facility and their communications system (at
3  least as they existed when the Lease Agreement was executed). *Id.* ¶ 20. Instead, Defendants'
4  decision to terminate the Lease Agreement was a "business decision" that had nothing to do with
5  their technology change. *Id.* Plaintiff alleges that Defendants improperly terminated and ceased
6  performance for this reason on thousands of other similar lease agreements nationwide. *Id.* ¶ 22.

### B.  Procedural History

Plaintiff filed this action on August 19, 2015. Plaintiff asserts a claim for breach of contract and seeks a declaratory judgment that Sprint was not contractually entitled to terminate the Lease Agreement. *Id.* ¶¶ 36-45. Plaintiff brings these claims on behalf of similarly situated natural and legal persons who leased space within California to any defendant or their subsidiaries for a cell site, whose lease Defendants terminated by exercising their unilateral right under a clause that is the same or materially identical to Section 12(b) of the Lease Agreement. *Id.* ¶ 26.[2]

Defendants moved to dismiss on September 14, 2015. Defendants contend that Plaintiff cannot state a claim for breach of contract based on their termination of the Lease Agreement because the termination provision in Section 12(b) gave them sole discretion to determine whether the Leased Premises were appropriate for their design or engineering specifications. Mot. at 6-7. In response to Plaintiff's argument that the Leased Premises remained appropriate for the system that they used when the Lease Agreement was executed, Defendants argue that the relevant design and engineering specifications are whatever they determined at any given time was needed to operate their mobile telecommunications network.[3] Accordingly, Defendants assert that they were within their contractual rights to terminate the Lease Agreement after they stopped using the iDEN network technology that necessitated use of the Leased Premises in the first place.

---

[2] Plaintiff recently filed an unopposed motion to amend its proposed class definition. Dkt. No. 30.
[3] Defendants also point out that Plaintiff made a scrivener's error in its complaint in this regard. Plaintiff alleged that the "design or engineering specifications *of the Leased Premises*" remained appropriate for Defendant's communications facility and communications system. Compl. ¶ 20 (emphasis added). But there is no dispute that Section 12(b) of the Lease Agreement required that Defendants determine that the "design or engineering specifications *for its Communication Facility or the communications system to which the Communication Facility belongs*" was inappropriate before they could exercise their termination right. *Id.*, Ex. 1 ¶ 12 (emphasis added).

1    Furthermore, Defendants contend that Plaintiff cannot state a claim based on the allegation
2    that they improperly terminated the Lease Agreement for economic reasons (a claim that would
3    stand regardless of whose interpretation of the "design or engineering specifications" term is
4    correct). Defendants argue that Section 12(b) did not require them to determine that the Leased
5    Premises were no longer appropriate for technological reasons as a condition precedent to
6    termination. *Id.* at 8. In support of this position, Defendants point to the language in Section
7    12(b) that provides they are allowed them to make the appropriate determination "at any time."
8    *Id.* But, in any case, Defendants point to a press release they assert was incorporated by reference
9    in the complaint as proof that they did in fact terminate the Lease Agreement for reasons having to
10   do with the suitability of the Leased Premises for their technical specifications. *Id.*

11   Finally, Defendants argue that the Court should dismiss Plaintiff's stand-alone claim for a
12   declaration that Defendants had no right to terminate the Lease Agreement because it is not a
13   separate claim but a form of relief under the breach of contract claim. *Id.* at 10-11.

14   Plaintiff responds that Defendants' breach-of-contract arguments require that the Court
15   assume their interpretation of the language in the termination provision is correct, which is
16   impermissible at the dismissal stage. Opp. at 9.[4] Specifically, Plaintiff points out that the term
17   "communications system to which the Communications Facility belongs" in the termination
18   provision is left undefined. Under Plaintiff's interpretation, this term refers to the iDEN platform
19   that Defendants were using when the parties executed the Lease Agreement. If that were true,
20   then Defendants would not be able to objectively determine (or even subjectively determine in
21   good faith) that the Leased Premises were no longer appropriate for their design or engineering
22   specifications. Plaintiff argues this constitutes a latent ambiguity in the contractual language that
23   precludes dismissal as a matter of law. Similarly, Plaintiff argues that it is (at least) ambiguous
24   whether Section 12(b) included a condition precedent to termination that required Defendants to
25   actually make a subjective determination that the Leased Premises were no longer appropriate. *Id.*

---

[4] Plaintiff does admit, however, that it made the scrivener's error that Defendants identified in the motion. *Id.* at 6, n.18 ("This is an inadvertent misstatement of the Lease or Plaintiff's position. Plaintiff can in good faith amend the Complaint to accurately track the Lease language[.]").

4

1  Plaintiff also responds that Defendants' argument that their press release proves that they did in
2  fact terminate the Lease Agreement for technical reasons is an evidentiary question that is not
3  appropriate for determination at the dismissal stage.  Finally, with respect to its declaratory relief
4  claim, Plaintiff argues that it is a valid separate claim that may be critical at class certification,
5  where the burdens vary depending on relief sought.  *Id.* at 10.
6        In reply, Defendants do not address Plaintiff's argument that the term "communications
7  system to which the Communications Facility belongs" is ambiguous.  Instead, Defendants argue
8  that the plain language of Section 12(b) shows that they had unfettered discretion to terminate the
9  lease at any time and, in any case, made the subjective determination that the Leased Premises
10 were no longer suitable for its specifications, to the extent that was even required.  Reply at 4-8.

## II. REQUEST FOR JUDICIAL NOTICE

12       Before turning to the substance of the motion to dismiss, the Court considers Defendants'
13 request for judicial notice of (1) a press release that Plaintiff references in the complaint and (2) an
14 order granting a motion to dismiss in a similar lawsuit.  Mot. at 12, Exs. A & B.  Plaintiff filed an
15 opposition to this request, arguing that the press release is not judicially noticeable because it is
16 self-serving hearsay.  Dkt. No. 19-1 at 1-2.  Defendants replied that "a court may consider
17 evidence outside the pleadings on a motion to dismiss under either the doctrine of incorporation by
18 reference or the doctrine of judicial notice."  Dkt. No. 20-1 at 2 (citing *United States v. Ritchie*,
19 342 F.3d 903, 908 (9th Cir. 2003)).  The Court will address the applicability of each doctrine.
20       Under the incorporation by reference doctrine, a court may consider a document extrinsic
21 to the complaint in deciding a Rule 12(b)(6) motion if the document's "authenticity is not
22 contested and the plaintiff's complaint necessarily relies on" it.  *Lee v. City of Los Angeles,* 250
23 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)); *see
24 also Ritchie*, 342 F.3d at 908 (document may be incorporated by reference "if the plaintiff refers
25 extensively to the document or the document forms the basis of the plaintiff's claim").  When a
26 document is incorporated by reference, "the district court may treat such a document as part of the
27 complaint, and thus may assume that its contents are true for purposes of a motion to dismiss
28 under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at 908.

Similarly, the doctrine of judicial notice permits district courts to take as true "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  For example, the existence of proceedings in other courts, including orders, is the proper subject of judicial notice when directly related to the case.  *Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (internal citations omitted).

The Court grants in part and denies in part Defendants' request for judicial notice.  With respect to the press release, the incorporation by reference doctrine does not allow the Court to assume the *truth* of the statements made in that document simply because Plaintiff referred to the document in the complaint.  *See Ritchie,* 342 F.3d at 908 ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document by reference[.]") (citing 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 1327 (2d ed.1990)).  Plaintiff's complaint does not "necessarily rely upon" the press release, and the release is not the "basis of" its claim.  The "relying on" and "basis of the claim" formulations are essentially intended to prohibit a plaintiff who alleges that a document supports its claim from withholding other parts of the same document from the court's consideration at the motion to dismiss stage.  *See Parrino*, 146 F.3d at 706 (where the plaintiff's claim about insurance coverage was based on the contents of a coverage plan, the plan documents were "essential to his complaint" and properly incorporated by reference); *In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (where plaintiff based stock fraud claim on the contents of SEC filings, those filings were properly incorporated by reference).  Here, by contrast, Plaintiff acknowledges that Sprint issued the press release of which Defendants seek judicial notice, but expressly *denies* that the statements in it are truthful representations of Sprint's intent with regard to its termination of the Lease Agreement.  *See* Compl. ¶ 20.  Accordingly, the incorporation by reference doctrine simply cannot provide a basis for the Court to assume the truth of these statements at the motion to dismiss stage.

Nor may the Court take judicial notice of the press release as substantive evidence of what Sprint did or did not actually do before issuing the release, because that is the core disputed factual

6

1    matter in the case. *Lee*, 250 F.3d at 689 (citing Fed. R. Evid. 201(b) in explaining that "a court
2    may not take judicial notice of a fact that is 'subject to reasonable dispute'"). In other words, the
3    judicial notice doctrine does not permit the Court to resolve disputed issues regarding Sprint's
4    actions and motive in Sprint's favor at the pleading stage based on the press release. *See Lee,* 250
5    F.3d at 689-690 (district court properly took judicial notice of existence of publicly-recorded,
6    signed extradition waiver form, but "erred by taking judicial notice of disputed matters" in
7    concluding that signer of form in fact validly waived his rights); *In re Bare Escentuals, Inc. Secs.*
8    *Litig.*, 745 F. Supp. 2d 1052, 1066-67 (N.D. Cal. 2010) (taking judicial notice of extrinsic
9    materials discussed in the complaint, but not for the truth of all matters asserted, where plaintiffs
10   objected that "it is impermissible at the pleading stage for the court to take judicial notice of facts
11   that are substantively in dispute, and which go to the merits of plaintiffs' claims"). The Court
12   will, however, take judicial notice of the existence and facial content of the press release, given the
13   complaint. *See Lee*, 250 F.3d at 689-90; *Bare Escentuals*, 745 F. Supp. 2d at 1066-67. In other
14   words, there is no dispute that the press release Defendants have submitted is the one referenced in
15   the complaint, and it says what it says.

16   With respect to Defendants' request for judicial notice of another court's order granting a
17   motion to dismiss in a similar case, judicial notice is not appropriate because that case is not
18   directly related to the instant action. *See Tigueros*, 658 F.3d at 987. To the extent Defendants
19   seek to cite that case in support of their arguments, judicial notice is also unnecessary: the Court
20   can, and will, consider the reasoning of that ruling for whatever persuasive value it may have.

21   **III.    LEGAL STANDARD**

22   Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint
23   for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to
24   dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its
25   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the
26   plaintiff pleads "factual content that allows the court to draw the reasonable inference that the
27   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
28   For the purposes of this analysis, a court "accept[s] factual allegations in the complaint as

1  true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*
2  *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Moreover, a court
3  "presume[s] that general allegations embrace those specific facts that are necessary to support the
4  claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994). A court is not required,
5  however, to "assume the truth of legal conclusions merely because they are cast in the form of
6  factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal
7  quotation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient
8  to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## IV.     DISCUSSION

Defendants move to dismiss both of Plaintiff's claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The Court addresses each claim in turn.

### A.     Breach of Contract

The parties agree that California law controls this diversity action and, therefore, provides the substantive law for Plaintiff's breach of contract claim. Under California law, a plaintiff states a claim for breach of contract where it alleges: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

As set forth above, Defendants contend that Plaintiff cannot state a legally-cognizable theory of breach for three independent reasons. First, Defendants argue that Plaintiff erroneously alleges that they improperly terminated the Lease Agreement for failing to determine whether the "design or engineering specifications *of the Leased Premises*" were inappropriate for its needs. *See* Compl. ¶ 20 (emphasis added). The termination provision undisputedly refers to the "design or engineering specifications *of the Communications Facility or the communications system to which the Communications Facility belongs*," not of the Leased Premises. *See id.* (emphasis added). Second, Defendants argue that even if Plaintiff had properly applied the language of the provision, Plaintiff still could not validly allege that Defendants improperly terminated the Lease Agreement because the termination provision gave them the sole discretion to determine whether termination for technological reasons was appropriate. Under this interpretation, it did not matter

8

whether the Leased Premises were objectively appropriate for Defendants' design or engineering specifications. All that matters was that Defendants made a subjective determination. And third, even if Defendants did not subjectively make that determination *before* terminating the Lease Agreement, the termination provision did not require that kind of "contemporaneous" decision.

### 1. Plaintiff's Drafting Error

As an initial matter, there is no dispute that Plaintiff incorrectly alleges that the termination provision required Defendants to determine that the "design or engineering specifications of the Leased Premises" were no longer appropriate. In fact, while the motion to dismiss was pending, Plaintiff filed an unopposed motion seeking leave to file an amended complaint to correct this error. Dkt. No. 30. Plaintiff's pleading error causes its claim to fail as a matter of law. But, as Plaintiff has shown, it can easily fix this mistake in an amended pleading. Accordingly, the Court dismisses Plaintiff's breach of contract claim on this basis but grants leave to amend.

### 2. Contractual Ambiguity of Termination Provision

Assuming that Plaintiff makes this simple correction, the Court must still decide whether Plaintiff can state a claim. Defendants' position is that they had unfettered discretion to terminate the Lease Agreement based on a determination that Leased Premises were no longer appropriate for the design or engineering specifications of its communications system. But Plaintiff argues that it is ambiguous whether the design or engineering specifications referenced in the termination provision refer to those that Defendants had for their communications system at the time the Lease Agreement was executed or whether the definition was subject to change and it referred to the communications system that replaced the iDEN platform. If it is the former, Plaintiff argues that Defendants breached the Lease Agreement by failing to make the appropriate determination.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting[.]" Cal. Civ. Code § 1636. "[S]uch intent is to be inferred, if possible, solely from the written provisions of the contract," read in their ordinary and popular sense, unless it appears the parties used the terms in some special sense. *AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1995) (citing Cal. Civ. Code § 1639). If the language used is "clear and explicit," then it controls as a matter of law. *Segal v. Silberstein*, 156 Cal. App.

9

4th 627, 633 (2007). But where a contract is "capable of two or more constructions, both of which are reasonable," it is considered ambiguous. *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). When a contract is ambiguous, dismissal at the pleading stage is inappropriate. *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109, 2015 WL 4554377, at * 4 (N.D. Cal. Jul. 28, 2015).

The Lease Agreement undisputedly does not define the term "communications system to which the Communications Facility belongs." While the parties do not dispute the phrase refers to some mobile telecommunications network, the Lease Agreement does not offer any guidance on whether the parties intended that term to have a static or dynamic meaning. *See* Cal. Civ. Code § 1636 (intent of parties at time of contracting controls). In other words, the parties dispute whether Defendants could change the design or engineering specifications of their communications system and then, on that basis, terminate the Lease Agreement. Defendants argue that the discretionary language, "*Tenant determines* at any time" what is appropriate for "its" communications system, made it their prerogative to determine what constitutes their communications system throughout the course of performance. *See* Compl., Ex. 1 ¶ 12(b) (emphasis added).

Without question, the discretionary language of the termination provision gave Defendants the unilateral and subjective right to determine whether the Leased Premises were appropriate for the design or engineering specifications of their communications system. *See Pub. Storage v. Sprint Corp.*, No. CV 14-2594, 2015 WL 1057923, at **11-15 (C.D. Cal. Mar. 9, 2015) ("[T]he phrase 'if Lessee determines' vests the Lessee with a measure of discretion to determine whether the premises are appropriate."). But that finding of discretion does not resolve whether the definition of communications system is static or dynamic. Plaintiff's position is that Defendants bargained only for the right to terminate the Lease Agreement in the event that the Leased Premises became inappropriate for the iDEN system. Otherwise, Plaintiff argues, Defendants would have a broad termination right that could allow it to change its specifications the moment it wanted to end the Lease Agreement. The Court finds that both Plaintiff's and Defendants' interpretations of the term are reasonable at this stage and, therefore, the provision is ambiguous. Because Plaintiff's interpretation would allow a claim for breach of contract, the Court finds that

10

dismissal is not warranted.

The authorities that Defendants cite do not change the analysis. None of the unilateral termination provisions in the lease agreements underlying those disputes track the language used in Section 12(b). The termination provision in *TBM Land Conservancy, Inc. v. Nextel West Corp., et al.*, for example, permitted the defendant to terminate the lease agreement if it "determine[d] that the Premises are not appropriate for its operations *for technological reasons*[.]" 131 F. Supp. 3d 1130, 1131-32 (D. Colo. 2015) (emphasis added). The court in *TBM Land* found that the term "technological reasons" unambiguously included the defendant's proffered reason for termination: "that the technology on the Site had become obsolete." *Id.* at 1136. Defendants argue that there is no material distinction between the right to terminate for "technological reasons" and the right to terminate where Defendants have determined the design or engineering specifications of their communications system make the Leased Premises inappropriate. Reply at 6, n.2. But the clause in *TBM Land* was both unambiguous and arguably broader than the clause at issue here. The meaning of the term "not appropriate for . . . technological reasons" can be determined by reference to the plain meaning of the word "technological," which has an objective definition. *See TBM Land*, 131 F. Supp. at1135 & n.6 (relying on dictionary definition to define "technological"). By contrast, in this case, "not appropriate under . . . [the] design or engineering specifications of the Communications Facility or communications system to which the Communications Facility belongs" is a term that permits two different and reasonable constructions: one that is fixed to the specifications existing at the time the contract was signed and one that is not.

The other cases cited by Defendants involved termination clauses either tracking the one in *TBM Land* or granting even broader termination rights for "economic reasons." Moreover, these cases resolved disputes about ambiguities in those clauses at the summary judgment stage, rather than on motions to dismiss. *See Pub. Storage*, 2015 WL 1057923, at \*\*11-15 (granting summary judgment to the defendants on the ground that the "technological reasons" clause permitted the defendants to terminate their use of the premises by shifting away from the iDEN network); *Almany Invs., Ltd. v. Nextel South Corp.*, No. 1:14-cv-22607, 2015 WL 74091, at \*3 (S.D. Fla. Jan. 6, 2015) (granting summary judgment to the defendants because their even broader

11

"economic or technological reasons" termination clause permitted the defendants to terminate their use of the premises by shifting away from the iDEN network); *Seachase Condo. Owner's Ass'n, Inc. v. Nextel WIP Lease Corp.*, 2013 WL 6385911, at \*\*4-6 (S.D. Ala. Dec. 6, 2013) (same). These cases suggest that even where the unilateral termination clauses at issue were substantially broader than the one in the Lease Agreement, disputes about breach were appropriately resolved beyond the pleading stage.

### 3. Conditional and Good Faith Nature of Unilateral Termination Rights

Even if the Court had found that Defendants' interpretation of the termination clause was controlling, dismissal would still be inappropriate. Plaintiff claims that Defendants did not in fact subjectively determine that the Leased Premises were inappropriate for its design or engineering specifications, regardless of how their communications system is defined. Plaintiff argues that Defendants subjectively determined only that they wanted to terminate the Lease Agreement for business reasons, *i.e.* to save money. If that were true, Plaintiff argues, Defendants failed to perform a condition precedent to termination, causing their termination to constitute breach.

Defendants first respond that the press release that Plaintiff referenced in its complaint proves that they terminated the Lease Agreement on the grounds that its communications system had changed. *See* Mot., Ex. A (press release states in relevant part that, "Sprint also announced that it plans to cease service on the iDEN Nextel National Network as early as June 30, 2013 as part of its Network Vision plan -- a series of network updates designed to offer next generation network capabilities to customers . . . Network Vision is expected to add net economic value for Sprint from . . . cell site reduction[.]"). But, as discussed above in the context of Defendants' request for judicial notice, it is not appropriate to assume the truth of the statements made in the press release (*i.e.*, that Sprint was in fact terminating cell-site lease agreements because it was changing its communications system). While Sprint's press release may be evidence that Defendants determined the Leased Premises were no longer appropriate for a permissible reason before terminating the Lease Agreement, the Court may not draw inferences in Defendants' favor at the motion to dismiss stage.

Defendants again point to *TBM Land* in support of their position to the contrary. There,

12

1  the court did find that the defendants' termination notice was conclusive evidence of a valid
2  reason to terminate their lease at the dismissal stage. 131 F. Supp. at 1133. But the court only
3  found that evidence conclusive because "[t]he parties agree[d] that Nextel's letter . . . accurately
4  reflects Nextel's reasons for terminating the Site Lease." *Id.* No such judicial admission exists in
5  this case. To the contrary, Plaintiff alleges that no determination was made at all. Compl. ¶ 20.
6  In fact, the *TBM Land* court distinguished that case from a case similar to this one on precisely
7  that basis. 131 F. Supp. at 1133 (discussing *Lofty Enters., Inc. v. Nextel Comm'ns of the Mid-Atl.,*
8  *Inc.*, No. 04-P-804, 2005 WL 2787563, at * 1 (Mass. Ct. App. Oct. 26, 2005) ("The Court finds
9  that *Lofty* is distinguishable. In that case, the court held that the plaintiff was entitled to take
10 discovery to determine whether Nextel's stated reason [for termination of the site lease] 'had a
11 basis in fact or, in other words . . . was made in good faith.' Here, the parties do not dispute
12 Nextel's basis for terminating the Site Lease.") (internal citations omitted)). Accordingly, Sprint's
13 press release does not resolve this dispute.

14     Defendant next argues that even if it did not determine that its communications system's
15 specifications made the Leased Premises inappropriate "as a predicate act to termination," it did
16 not have to because the termination provision did not contain any condition precedent. Mot. at 8;
17 Reply at 4-5. This argument is inconsistent with both the contract's language and fundamental
18 principles of contract law. The termination provision provides that "[Nextel California] shall have
19 the right to terminate this Lease *upon any of the following events* . . . If [it] determines that the
20 Leased Premises are not appropriate under [its design or engineering specifications]." Compl., Ex.
21 A ¶ 12 (emphasis added). As the plain language of this provision makes clear, Defendants'
22 termination right would accrue only when a specified "event[]" had occurred. *Id.* The specified
23 event now at issue is Defendants' determination that the Leased Premises were no longer
24 appropriate for their communication system's design or engineering specifications. Defendants'
25 argument that they could make this determination "at any time" only reinforces the fact that they
26 had to make an appropriate determination before terminating the Lease Agreement. Furthermore,
27 without a condition precedent, the unilateral termination provision would have been invalid under
28 California law. That is because "[a] contract may contain a valid provision giving one or the other

13

1  party an option to terminate it *on specified conditions*." *Benard v. Walkup*, 272 Cal. App. 2d 595

2  (1969) (emphasis added). Without a specified condition precedent in a unilateral termination

3  clause, "a contract is lacking in mutuality [because] one party has the right to terminate it at any

4  time at his pleasure." *Id.* For that reason, to the extent that Defendants had any right to terminate

5  at all, the unilateral termination clause *must* have included a condition precedent.[5]

6  Accordingly, Plaintiff can state a claim for breach of contract by alleging that Defendants

7  failed to determine that the design or engineering specifications of their communications system

8  made the Leased Premises inappropriate before terminating the Lease Agreement.

9  **B.    Declaratory Relief**

10  Plaintiff seeks a declaratory judgment that "Sprint was not contractually entitled to

11  terminate the [Lease Agreement]." Compl. ¶¶ 36-45. Defendants move to dismiss Plaintiff's

12  standalone claim for declaratory relief on the basis that it is entirely duplicative of its breach of

13  contract claim. Mot. at 11. Plaintiff contends that it remains to be seen whether the breach of

14  contract action will provide an adequate remedy because the Court could decline to certify a class

15  under Federal Rule of Civil Procedure 23(b)(3), but certify a class under the more liberal standards

16  of Rule 23(b)(2). Opp. at 10. Defendants reply that Plaintiff cannot "ride the coattails of absent

17  class members" to survive a motion to dismiss or justify a redundant claim. Reply at 9-10.

18  As an initial matter, neither party addresses whether federal or state law controls the claim.

19  "When a claim for declaratory relief is in federal court based on diversity of citizenship, the

20  question whether to exercise federal jurisdiction to resolve the controversy becomes a procedural

21  question of federal law." *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 752 (9th Cir.

22  1996), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir.

23  1998) (en banc). State law, however, controls the substantive issues in those declaratory judgment

24  actions. *See CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1070, 1072 (S.D.

---

[5] Defendants also had a duty to exercise its discretion under the unilateral termination clause in good faith. *See Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985) ("[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing."). Plaintiff does not, however, allege breach of the implied covenant of good faith and fair dealing in its complaint.

14

Cal. 2011). Accordingly, the Court applies federal procedural law to determine whether to dismiss the declaratory relief claim, considering the nature of the state law breach of contract claim.

Under federal procedural law, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *U.S. v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985). For that reason, "courts have dismissed companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate." *Davis v. Capitol Records, LLC*, No. 12-cv-1602, 2013 WL 1701746, at **3-4 (N.D. Cal. Apr. 18, 2013). But "[d]eclaratory relief is appropriate . . . where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006) (denying motion to dismiss where declaratory judgment would clarify ongoing contractual obligations).

Plaintiff's declaratory relief claim is plainly duplicative of its breach of contract claim. The contract claim seeks damages for Defendants' purportedly improper termination of the Lease Agreement. Deciding that claim will necessarily determine the substance of Plaintiff's declaratory relief claim, which asks whether Defendants' had the right to terminate the Lease Agreement, and the declaratory relief claim adds nothing to the remedy available to Plaintiff. *See Reyes v. Nationstar Mortgage,* 2015 WL 4554377, at **7-8 (dismissing declaratory relief action related to breach of contract because breach of contract claim provided adequate legal remedy). In addition, Plaintiff cannot rely on absent class members to save its claim because it defines the putative class as composed of persons "whose lease Sprint purported to terminate" based on the same or materially identical unilateral termination provision. By definition, there are no ongoing contractual relationships between the putative class and Defendants that would make declaratory relief not entirely redundant with the breach of contract claim. *Cf. Davis*, 2013 WL 1701746, at **3-4. For these reasons, Plaintiff's claim for declaratory relief is fatally flawed, and amendment would be futile, so that claim is dismissed without leave to amend.

### C. Plaintiff's Unopposed Motion to Amend the Proposed Class Definition

Finally, while the motion to dismiss was under submission, Plaintiff filed an unopposed motion seeking leave to amend its complaint to change its proposed class definition and make other specified changes. Dkt. No. 30. For the sake of efficiency, the Court addresses Plaintiff's request in connection with this motion. Plaintiff asserts that its original proposed class definition does not reflect its current understanding of the facts with respect to the termination provisions in the lease agreements of putative class members. *Id.* at 2-3. Federal Rule of Civil Procedure 15 provides that a party may amend its pleading at any time with the court's leave, which should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Because justice so requires, the Court grants Plaintiff's motion seeking leave to amend the complaint on this basis.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH LEAVE TO AMEND** Plaintiff's breach of contract claim, and **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's declaratory relief claim. Plaintiff may amend its complaint to correct the drafting error discussed above and its proposed class definition as it has requested, and may make the other changes set out in Exhibit 1 to the Valerian Declaration (at Dkt. No. 30), but may not make any other amendments without leave of Court. The Court **SETS** a case management conference for May 31, 2016, at 2:00pm to discuss scheduling matters.

**IT IS SO ORDERED.**

Dated: 5/24/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge